UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALITY TOWING, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>VALESKA N. JACKSON, et al.,<br><br>Defendants. | Case No. 15-cv-01756-PSG<br><br>**ORDER GRANTING-IN-PART MOTION TO DISMISS AND DENYING AS MOOT MOTION TO STRIKE**<br><br>**(Re: Docket Nos. 38, 39)** |

Plaintiff Victor Vargas owns and operates a towing company, Plaintiff Quality Towing, Inc.[1] Each year from 2000 until 2011, Quality Towing successfully applied to the Monterey County office of the California Highway Patrol to appear on CHP's list of preferred tow service operators.[2] In June 2011, however, Defendant Valeska Jackson took over as the CHP officer in charge of Monterey County's towing program and became concerned about Vargas' criminal record, even though his convictions had been dismissed and he had disclosed them on each of his previous applications.[3] On Jackson's recommendation, and with the approval of her captain, Defendant William Perlstein, the Monterey County CHP suspended Quality Towing's towing services agreement, notified other CHP offices, denied Quality Towing's appeals and rejected Quality Towing's applications for the next four years.[4]

---

[1] *See* Docket No. 33 at ¶¶ 11-12.

[2] *See id.* at ¶¶ 26-27.

[3] *See id.* at ¶¶ 21-22, 28, 34, 37-39.

[4] *See id.* at ¶¶ 40-65, 75-94, 106-137.

1
Case No. 15-cv-01756-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND DENYING AS MOOT MOTION TO STRIKE

Claiming that Jackson and Perlstein, as well as Defendant Joseph Farrow, the CHP commissioner, acted arbitrarily and out of malice, Plaintiffs filed this suit.[5]  Defendants move to dismiss the operative complaint under Fed. R. Civ. P. 12(b)[6] and to strike Plaintiffs' state law claims pursuant to Cal. Civ. Proc. Code § 425.16, the anti-SLAPP statute.[7]  Plaintiffs oppose both motions.[8]  For the reasons set forth below, the motion to dismiss is GRANTED-IN-PART, with leave to amend.  The anti-SLAPP motion is DENIED AS MOOT.[9]

**I.**

Vargas entered the towing business in 1989, and he had become involved with Quality Towing by 1999.[10]  His first felony conviction was in 1995, but the conviction was dismissed in 1999.[11]  Vargas was convicted of a second felony in 2001, but that conviction was dismissed as well two years later.[12]  Both convictions were dismissed by court order pursuant to Cal. Penal Code § 1203.4, which provides that the defendant "shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted."

---

[5] *See id.* at ¶ 138-140.

[6] *See* Docket No. 38.

[7] *See* Docket No. 39.

[8] *See* Docket Nos. 45, 48.

[9] Presumably because the anti-SLAPP statute allows for attorney's fees, *see* Cal. Civ. Proc. Code § 425.16(c)(1), Defendants ask the court to rule on the anti-SLAPP motion before considering the motion to dismiss the same claims under Rule 12(b)(6).  *See* Docket No. 38 at 1.  The court exercises its discretion to deny this request.  *See, e.g.*, *Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*, Case No. 15-cv-02442, 2015 WL 7075696, at *7 (N.D. Cal. Nov. 13, 2015); *Lara v. Aurora Loan Servs.*, Case No. 12-cv-00904, 2013 WL 1628955, at *9 (S.D. Cal. Apr. 16, 2013); *Plevin v. City & County of San Francisco*, Case No. 11-cv-02359, 2011 WL 3240536, at *5 (N.D. Cal. July 29, 2011); *see also Phillips v. KIRO-TV, Inc.*, 817 F. Supp. 2d 1317, 1328 (W.D. Wash. 2011).

[10] *See* Docket No. 33 at ¶¶ 11, 25.

[11] *See id.* at ¶ 21.

[12] *See id.* at ¶ 22.

2
Case No. 15-cv-01756-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND DENYING AS MOOT MOTION TO STRIKE

The orders dismissing his convictions required Vargas to continue to disclose them in connection with applications for public office or for licensure by a state agency, but the statute does not speak to whether Vargas needed to disclose his dismissed convictions in Quality Towing's applications for CHP towing service agreements.[13]  Nevertheless, Quality Towing listed those convictions in each of its TSA applications from 1999 to 2011.[14]  The Monterey County CHP office rejected Quality Towing's 1999 application because of Vargas' felony conviction.[15]  But over the next twelve years, five different CHP officers assigned to the Monterey County office approved each of Quality Towing's subsequent applications.[16]  With the help of the CHP business in Monterey County, as well as other law enforcement contracts that it obtained, Quality Towing grew to generate annual revenues of $1.5 million by 2012.[17]

Things changed after Jackson took over in Monterey County around June 2011.[18]  When Quality Towing applied to renew its TSA in April 2012, Jackson prepared an internal memo alleging that the company had violated its agreement and recommending that the company be suspended from the towing program.[19]  Jackson claimed that Vargas' record "reveal[ed] a distinct history of moral turpitude" and that Quality Towing had violated Cal. Veh. Code § 13377 by

---

[13] *See* Cal. Penal Code § 1203.4(a)(1) (providing that an order dismissing a conviction under this statute "does not relieve [the defendant] of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery Commission").

[14] *See* Docket No. 33 at ¶¶ 26, 28.

[15] *See id.* at ¶ 26.

[16] *See id.* at ¶ 27.

[17] *See id.* at ¶¶ 29-31.

[18] *See id.* at ¶ 34.

[19] *See id.* at ¶¶ 37-38.

3
Case No. 15-cv-01756-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND DENYING AS MOOT MOTION TO STRIKE

failing to disclose either his felony convictions or his arrests not leading to convictions.[20] But in fact, Vargas had disclosed his convictions and subsequent dismissals.[21] Furthermore, the statute that Jackson cited only mentioned arrests or convictions for certain violent crimes, while none of Vargas' arrests were for any of those crimes.[22]

In July 2012, in response to Jackson's memo, Perlstein suspended Quality Towing's active TSA and denied its application for the 2012/13 program.[23] Perlstein also sent copies of the suspension and denial letters to other CHP divisions and contacted local law enforcement agencies that had contracted Quality Towing.[24] Other counties and agencies soon followed suit and terminated their own contracts with Quality Towing.[25]

The suspension letter cited "flagrant violations" of the TSA, and in particular Element 18(F) of the agreement.[26] The latter provision allowed the CHP to suspend a tow operator who had been convicted of one of a number of specific crimes or, more broadly, any crime involving moral turpitude.[27] The denial letter, which followed a few weeks later, cited Vargas' past criminal convictions and his failure to disclose them.[28] Quality Towing appealed the denial twice, but CHP

---

[20] *Id.* at ¶¶ 39-40.

[21] *See id.* at ¶ 41.

[22] *See id.* at ¶ 42; *see also* Cal. Veh. Code § 13377(a) (providing that "[t]he department shall not issue or renew, or shall revoke, the tow truck driver certificate of an applicant" who had been convicted for violations of Cal. Penal Code §§ 220, 261(a)(1)-(4), 264.1, 267, 288 or 269 or Cal. Pub. Res. Code § 5164(a)(2), which include sexual crimes, kidnapping and other violent crimes).

[23] *See* Docket No. 33 at ¶¶ 44, 52.

[24] *See id.* at ¶¶ 45, 52.

[25] *See id.* at ¶¶ 51, 66-69.

[26] *Id.* at ¶ 46.

[27] *See id.* at ¶ 48.

[28] *See id.* at ¶ 53.

1  denied each appeal and noted that dismissal of a conviction under Section 1203.4 did not affect
2  eligibility for the towing program.[29]  Indeed, Section 81.2 of the Highway Patrol Manual
3  specifically provided as much.[30]

4  In the following years, Perlstein continued to deny Quality Towing's applications and
5  appeals on largely the same grounds.[31]  Sometime in 2013, Jackson requested that Salinas police
6  issue an arrest warrant against Vargas and his family for operating Quality Towing without a
7  license in Salinas, although the company's primary location was outside the city limits.[32]  But in
8  2014, Vargas petitioned the Office of Administrative Law, alleging that HPM 81.2 was an
9  underground regulation in violation of the California Administrative Procedure Act.[33]  A few
10  months later, Commissioner Farrow responded that "the references to Section 1203.4(a) PC have
11  been removed from HPM 81.2."[34]

12  When Quality Towing applied for a TSA for 2014/15, however, Perlstein again denied the
13  application, citing Vargas' previous conduct.[35]  Quality Towing appealed, but Perlstein and then a

---

[29] *See id.* at ¶¶ 56-64.

[30] *See id.* at ¶¶ 2, 99.

[31] *See id.* at ¶¶ 75-94.  CHP also denied on procedural grounds Vargas' application to drive for other towing companies.  *See id.* at ¶¶ 95-98.

[32] *See id.* at ¶¶ 70-74.

[33] *See id.* at ¶ 100.  "An underground regulation is a regulation that a court may determine to be invalid because it was not adopted in substantial compliance with the Administrative Procedure Act ([Cal.] Gov. Code, § 11340 et seq.)." *Modesto City Sch. v. Educ. Audits Appeal Panel*, 123 Cal. App. 4th 1365, 1381 (2004) (citation omitted).  "[A] regulation is an underground regulation if (1) the agency intended it to apply generally rather than in a specific case and (2) the agency adopted it to implement, interpret, or make specific the law enforced by the agency." *Excelsior Coll. v. Cal. Bd. of Registered Nursing*, 136 Cal. App. 4th 1218, 1239 (2006) (citing *Modesto City Sch.*, 123 Cal. App. 4th at 1381).

[34] Docket No. 33 at ¶ 101.

[35] *See id.* at ¶¶ 106-108.

5
Case No. 15-cv-01756-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND DENYING AS MOOT MOTION TO STRIKE

superior officer denied the appeals as well.[36] Although both officers noted the change in the HPM, they justified the denial on the basis of Vargas' failure to disclose a conviction for a misdemeanor in 2005.[37] They concluded that the misdemeanor was a crime of violence or moral turpitude that Vargas was required to disclose, even though the prosecuting district attorney and an internal CHP memo disagreed.[38]

Predictably, Perlstein again denied Quality Towing's TSA applications the following year.[39] Perlstein also denied their appeal, refused to provide Plaintiffs with a written decision and yelled at Vargas' wife in the lobby after the appeal hearing.[40] Quality Towing appealed again, but CHP denied it on the basis that Quality Towing had submitted unreadable documentation for two of its trucks.[41] The appeal officer did not address any of the stated grounds for Perlstein's denial.[42]

As a result of the lost business from law enforcement, Quality Towing's revenues have dropped by 80%, and Plaintiffs have been forced to downsize substantially to stay afloat financially.[43] They trace these losses back to Jackson and Perlstein's allegedly unlawful conduct and to Farrow's failure to cure it.[44] Accordingly, Plaintiffs plead seven causes of action:

(1) a claim under 42 U.S.C. § 1983 against all Defendants for depriving Plaintiffs of their due process rights by enforcing an underground regulation;

---

[36] *See id.* at ¶¶ 109-110, 114-117, 121-122.

[37] *See id.* at ¶¶ 112, 118-119, 123.

[38] *See id.* at ¶¶ 112, 118-119, 123, 126.

[39] *See id.* at ¶¶ 131-132.

[40] *See id.* at ¶¶ 133-134.

[41] *See id.* at ¶ 136.

[42] *See id.*

[43] *See id.* at ¶ 141.

[44] *See id.*

6
Case No. 15-cv-01756-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND DENYING AS MOOT MOTION TO STRIKE

1    (2)  a Section 1983 claim against all Defendants for retaliating against Plaintiffs for
2         asserting their administrative appeal rights and thus violating Vargas' right to free
3         speech and to petition for redress of grievances;
4    (3) a claim under 42 U.S.C. § 1985(3) against Jackson and Perlstein for engaging in a
5         conspiracy to deprive Vargas of his civil rights;
6    (4) a claim under 42 U.S.C. § 1986 against Farrow for failing to prevent a conspiracy;
7    (5)  a claim under the Bane Act[45] against all Defendants for interfering with Vargas'
8         due process rights granted by Section 1203.4;
9    (6) a tortious interference with contractual relations claim against Jackson and Perlstein
10        (only in their individual capacities) for causing other area commanders to terminate
11        Quality Towing's agreements with other CHP offices and
12   (7) a claim for equitable estoppel against all Defendants for denying Vargas'
13        application after accepting it for ten years.[46]

Claims 1 through 5 seek damages from Defendants in their individual capacities and injunctions against them in their official capacities.[47]

**II.**

This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1343 and 1367. The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[48]

**III.**

A complaint must contain "a short and plain statement of the claim showing that the

---

[45] *See* Cal. Civ. Code § 52.1.

[46] *See* Docket No. 33 at ¶¶ 150-220.

[47] *See id.* at ¶¶ 150-209.

[48] *See* Docket Nos. 14, 16.

7
Case No. 15-cv-01756-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND DENYING AS MOOT MOTION TO STRIKE

pleader is entitled to relief."[49]  When a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[50]  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[51]  Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[52]  Dismissal with prejudice and without leave to amend is appropriate if it is clear that the complaint could not be saved by amendment.[53]

At this stage of the case, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[54]  The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference and matters of which the court may take judicial notice.[55]  However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact or unreasonable inferences.[56]  Against these standards, only one of Plaintiffs' claims may proceed.

*First*, Defendants argue that Plaintiffs' claims against Jackson and Farrow in their official capacity are barred by sovereign immunity.  The Eleventh Amendment prohibits federal courts

---

[49] Fed. R. Civ. P. 8(a)(2).

[50] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[51] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[52] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[53] *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[54] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[55] *See id.*

[56] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Twombly*, 550 U.S. at 561 (holding that "a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

from hearing lawsuits seeking damages from state officials in their official capacities.[57] However, a federal court may grant prospective injunctive relief against state officials,[58] so long as the officials have some "fairly direct" connection with the allegedly illegal acts.[59]

Defendants claim that Plaintiffs cannot sue Jackson and Farrow in their official capacities because neither of them has such a direct connection with the injunctive relief that Plaintiffs seek.[60] In particular, Defendants have submitted declarations stating that Jackson is no longer the rotation tow officer for the CHP office for the Monterey area[61] and that Farrow is not directly responsible for administering the towing program.[62] Even assuming that the court may consider these materials, they do not establish that injunctive relief against these Defendants should be unavailable. As Plaintiffs point out, Jackson's declaration leaves open the possibility that her new post still requires her to evaluate TSA applications. Plaintiffs' proposed injunctions extend beyond the Monterey office, so they may still apply to her. As for Farrow, Plaintiffs ask the court to enjoin him to implement a new policy governing TSA applications, which he certainly has direct authority to do. Under *Ex parte Young*, Plaintiffs may seek this injunctive relief against Jackson and Farrow in their official capacities.

***Second***, Defendants argue that the court should dismiss Plaintiffs' entire complaint because Plaintiffs failed to exhaust their judicial remedies. In *Johnson v. City of Loma Linda*, the

---

[57] *See Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985).

[58] *See Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (citing *Ex parte Young*, 209 U.S. 128 (1908)).

[59] *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998) (quoting *L.A. Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)); *see also Ex parte Young*, 209 U.S. at 157 ("In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act . . . .").

[60] *See* Docket No. 33 at ¶¶ 161, 178, 191, 197

[61] *See* Docket No. 40 at ¶ 2.

[62] *See* Docket No. 39-1 at ¶ 2.

1  California Supreme Court held that a party aggrieved by a quasi-judicial decision by a government
2  agency must first challenge the agency's adverse findings through a mandamus action in superior
3  court.[63]  "The *Loma Linda* requirement of judicial exhaustion, however, is inapplicable in a § 1983
4  action brought in federal court," because "[i]t is well established that a § 1983 plaintiff need not
5  exhaust [s]tate remedies before bringing a federal civil rights claim."[64]  The same argument covers
6  Plaintiffs' other federal causes of action, all of which are civil rights claims.  Whether the doctrine
7  of claim preclusion applies, however, is a separate issue[65] that the parties have not fully briefed
8  and the court therefore does not reach.

9  ***Third***, Defendants argue that Plaintiffs' first cause of action, their claim under Section
10  1983 for a violation of Plaintiffs' due process rights, fails to state a claim.  Section 1983 protects
11  only "right[s] secured by the Constitution and laws of the United States."[66]  As Plaintiffs put it,
12  "the substance of Plaintiffs' grievance is that Defendants systematically violated Plaintiff's [sic]
13  due process rights by ignoring the rights afforded to Vargas by Cal. Pen. Code § 1203.4."[67]
14  Plaintiffs' first Section 1983 claim, therefore, rests on the assumption that Defendants violated
15  Plaintiffs' due process rights under the federal Constitution by failing to honor the protections that
16  a dismissal under Section 1203.4 conferred on Vargas.

17  This claim does not identify a due process violation.  In *Lone Star Security & Video, Inc. v.*

---

[63] *See* 24 Cal. 4th 61, 69-70 (2000); *see also Misischia v. Pirie*, 60 F.3d 626, 628-29 (9th Cir. 1995).

[64] *Embury v. King*, 191 F. Supp. 2d 1071, 1082-83 (N.D. Cal. 2001) (citing *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982)).

[65] *Cf. Miller v. County of Santa Cruz*, 39 F.3d 1030, 1034-35 (9th Cir. 1994) (giving preclusive effect to administrative findings that the plaintiff had not challenged in a mandamus proceeding in superior court); *Embury*, 191 F. Supp. 2d at 1083-84 (analyzing whether administrative findings had preclusive effect).

[66] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[67] Docket No. 48 at 14.

10
Case No. 15-cv-01756-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND DENYING AS MOOT MOTION TO STRIKE

1    *City of Los Angeles*, the Ninth Circuit held that a defendant does not violate a plaintiff's due
2    process rights merely by acting pursuant to a rule that is invalid under state law.[68]  As a result,
3    "even if [Plaintiffs are] being subjected to an underground regulation, that is not sufficient to state
4    a claim under [Section] 1983."[69]  Plaintiffs' first Section 1983 claim alleges no more than that.[70]
5    The claim is dismissed.

6    ***Fourth***, Defendants next move to dismiss Plaintiffs' second Section 1983 cause of action,
7    which alleges that Defendants retaliated against Plaintiffs for asserting their First Amendment
8    rights through the administrative appeal process.  To state a claim under Section 1983 for
9    retaliation in violation of the First Amendment, Plaintiffs must show the following:  "(1) [they]
10   engaged in constitutionally protected activity; (2) as a result, [they were] subjected to adverse
11   action by [D]efendant[s] that would chill a person of ordinary firmness from continuing to engage
12   in the protected activity; and (3) there was a substantial causal relationship between the
13   constitutionally protected activity and the adverse action."[71]  Plaintiffs need not establish,
14   however, that their "speech was actually inhibited or suppressed."[72]

15   Defendants argue primarily that the purportedly retaliatory actions would not have chilled
16   a person of ordinary firmness.[73]  Specifically, Plaintiffs allege that Jackson and Perlstein said that

---

[68] *See Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 584 F.3d 1232, 1236-37 (9th Cir. 2009).

[69] *Gray v. Hill*, Case No. 13-cv-2456, 2014 WL 1839073, at *2 (E.D. Cal. May 8, 2014).

[70] *See* Docket No. 33 at ¶¶ 156-157.

[71] *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (footnote omitted).

[72] *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999).

[73] Defendants also argue that Plaintiffs have alleged Defendants' retaliatory intent only in conclusory terms.  Defendants are correct that Plaintiffs "must ultimately prove that [Defendants'] desire to cause the chilling effect was a but-for cause of [Defendants'] action."  *Skoog v. County of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006).  However, "[i]ntent to inhibit speech . . . can be demonstrated either through direct or circumstantial evidence."  *Mendocino Envtl. Ctr.*, 192 F.3d at 1300-01.  Although their allegations of Defendants' thought processes are necessarily vague,

11
Case No. 15-cv-01756-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND DENYING AS MOOT MOTION TO STRIKE

1  Vargas would never work in the towing industry, did not include Quality Towing on the email
2  soliciting TSA applications from towing companies and obstructed Quality Towing's 2015 appeal
3  using various procedural mechanisms.[74]  As for Farrow, Plaintiffs allege that he retaliated against
4  them by failing to respond to their complaints and continuing to allow Perlstein to review their
5  applications.[75]  Plaintiffs' accusations against Farrow amount to silence and inaction, and they are
6  not enough to underlie a Section 1983 claim.[76]  On the other hand, as to Jackson and Perlstein,
7  Plaintiffs have alleged enough facts to support their retaliation claim.  The cause of action is
8  dismissed only as to Farrow.

*Fifth*, Defendants move to dismiss Plaintiffs' third and fourth causes of action, which allege that Jackson and Perlstein conspired to deprive Plaintiffs of the equal protection of the laws and that Farrow failed to prevent the conspiracy.  Plaintiffs bring these claims under 42 U.S.C. §§ 1985(3) and 1986, which speak of conspiracies "for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."[77]  For such claims to survive, Plaintiffs must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."[78]  The term "class" "unquestionably connotes something more than a group of individuals who share a desire

---

Plaintiffs have alleged facts sufficient to give rise to an inference of retaliatory intent.

[74] *See* Docket No. 33 at ¶¶ 168, 170, 172.

[75] *See id.* at ¶ 173.

[76] *Cf. Garland v. Skribner*, Case No. 06-cv-00198, 2008 WL 544566, at *3 (E.D. Cal. Feb. 26, 2008) ("Mere silence in response to plaintiff's written inquires, for example, is not action sufficiently adverse to rise to the level of a constitutional violation.").

[77] Although Plaintiffs also refer to the allegedly conspiratorial acts as violations of Vargas' due process rights, *see* Docket No. 33 at ¶ 183, those rights are not relevant to a claim under Section 1985(3).

[78] *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

12
Case No. 15-cv-01756-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND DENYING AS MOOT MOTION TO STRIKE

to engage in conduct that the § 1985(3) defendant disfavors."[79]  Accordingly, in the Ninth Circuit, "Plaintiffs have standing under Section 1985 only if they can show that they are members of a class that the government has determined 'require[s] and warrant[s] special federal assistance in protecting their civil rights.'"[80]

Here, Plaintiffs define their class as those individuals who have had convictions dismissed under Section 1203.4 of the California Penal Code.[81]  They point to no authority, however, for the proposition that the federal government has decided that this class "require[s] and warrant[s] special federal assistance."[82]  To the contrary, the Ninth Circuit has held that convictions dismissed under Section 1203.4 are not considered expunged under the Federal Sentencing Guidelines.[83]  Plaintiffs have not alleged a cause of action under Section 1985(3), and their derivative Section 1986 claim must fall as well.

***Sixth***, Plaintiffs' state law claims—their fifth, sixth and seventh causes of action—are barred by the California Government Claims Act.  "The [CGCA] requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part."[84]  The plaintiff must present a claim to the public entity no later

---

[79] *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993).

[80] *Maynard v. City of San Jose*, 37 F.3d 1396, 1403 (9th Cir. 1994) (alterations in original) (quoting *Sever v. Ala. Pulp Corp.*, 978 F.2d 1529, 1536-37 (9th Cir. 1992)).

[81] *See* Docket No. 33 at ¶ 182.

[82] *Maynard*, 37 F.3d at 1403 (quoting *Sever*, 978 F.2d at 1536-37).

[83] *See United States v. Hayden*, 255 F.3d 768, 772-74 (9th Cir. 2001).

[84] *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995) (citing *Snipes v. City of Bakersfield*, 145 Cal. App. 3d 861, 865 (1983)); *see* Cal. Gov't Code § 905.  The CGCA formerly was known as the California Tort Claims Act, but the California Supreme Court has held that the new name more accurately reflects the broad scope of the Act.  *See City of Stockton v. Superior Court*, 42 Cal. 4th 730, 741-42 (2007).

than six months after the cause of action accrued,[85] and the plaintiff must sue within six months after the public entity rejects the claim.[86] If a plaintiff fails to "allege facts demonstrating or excusing compliance with the claim presentation requirement," the court should dismiss his or her complaint "for failure to state facts sufficient to constitute a cause of action."[87]

The CGCA's presentation requirements extend to claims under the Bane Act.[88] They also cover suits against individual public employees arising from actions or omissions within the scope of their employment.[89] A request for injunctive or declaratory relief does not excuse compliance with the presentation requirement if the "primary purpose of the action" is to recover damages.[90]

Here, although Plaintiffs have asked the court to issue an injunction and grant declaratory relief, they also request $3.5 million in compensatory damages, not to mention punitive damages and statutory penalties.[91] This substantial sum is not merely "incidental or ancillary" to the remaining relief Plaintiffs seek.[92] Further, Plaintiffs specifically allege that each of the individual

---

[85] *See* Cal. Gov't Code § 911.2; *Robinson v. Alameda County*, 875 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012).

[86] *See* Cal. Gov't Code § 945.6(a).

[87] *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1243 (2004).

[88] *See Pinon-Gutierrez v. Cal. Highway Patrol*, Case No. 15-cv-0343, 2015 WL 5173068, at *3-4 (E.D. Cal. Sept. 3, 2015); *Williams v. City of Antioch*, Case No. 08-cv-2301, 2010 WL 3632199, at *4-5 (N.D. Cal. Sept. 2, 2010). Plaintiffs object under Civ. L.R. 3-4(e) to Defendants' citation to unpublished cases like *Williams*, but the rule covers only opinions designated "NOT FOR CITATION" in this or any other court. Unpublished cases do not always fall into that category.

[89] *See* Cal. Gov't Code §§ 950.2, 950.6; *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988).

[90] *Lozada v. City & County of San Francisco*, 145 Cal. App. 4th 1139, 1167 (2006) (emphasis omitted) (quoting *Gatto v. County of Sonoma*, 98 Cal. App. 4th 744, 762 (2002)).

[91] *See* Docket No. 33 at 43-45.

[92] *Lozada*, 145 Cal. App. 4th at 1167 (quoting *Gatto*, 98 Cal. App. 4th at 762).

Defendants were acting within the scope of their employment.[93] Because the CGCA applies and Plaintiffs do not allege that they complied with its commands, the court dismisses their state law claims for that reason alone.

Several of the state law claims have substantive defects as well. The Bane Act requires Plaintiffs to allege "threat, intimidation, or coercion" by Defendants that interfered with, or was an attempt to interfere with, Plaintiffs' exercise or enjoyment of state or federal rights.[94] Where the acts at issue were only speech, Plaintiffs must further allege specific facts showing that "the speech itself threatens violence against a specific person or group of persons."[95] But Plaintiffs' complaint mentions only Defendants' rejections of Plaintiffs' applications, "Jackson's statements that Plaintiffs would never again be approved for a TSA" and "Perlstein's continuing primary role in reviewing Plaintiffs' TSA applications."[96] These allegations do not meet the Bane Act standard. The administrative actions and Perlstein's continued role could not constitute threat, intimidation or coercion by themselves, and Jackson never verbally threatened violence. Plaintiffs' opposition points to other conduct that they consider more overtly threatening,[97] but these incidents do not appear on the face of the Bane Act claim. Separately, as Plaintiffs concede, California law does not recognize equitable estoppel as a separate cause of action.[98] Plaintiffs must plead equitable estoppel "either as a part of [another] cause of action or as a defense."[99]

---

[93] *See* Docket No. 33 at ¶ 152.

[94] Cal. Civ. Code § 52.1(a).

[95] *Id.* § 52.1(j).

[96] Docket No. 33 at ¶¶ 203-204.

[97] *See* Docket No. 48 at 19.

[98] *See Moncada v. W. Coast Quartz Corp.*, 221 Cal. App. 4th 768, 782 (2013); Docket No. 48 at 21.

[99] *Cent. Nat'l Ins. Co. v. Cal. Ins. Guarantee Ass'n*, 165 Cal. App. 3d 453, 460 (1985).

15
Case No. 15-cv-01756-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND DENYING AS MOOT MOTION TO STRIKE

## IV.

Defendants' motion to dismiss is GRANTED in its entirety, except as to Plaintiffs' second cause of action against Jackson and Perlstein. Dismissal without leave to amend is only appropriate if it is clear that the complaint could not be saved by amendment such as after a plaintiff's "repeated failure to cure deficiencies by amendments previously allowed."[100] Although Plaintiffs already have amended their complaint twice,[101] the court has never before ruled on the merits of their claims.[102] The court cannot yet conclude that further amendment would be futile. Leave to amend therefore is GRANTED. Any amended complaint shall be filed within 21 days.

**SO ORDERED.**

Dated: February 29, 2016

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[100] *Eminence Capital*, 316 F.3d at 1052 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[101] *See* Docket Nos. 1, 32, 33.

[102] *See* Docket No. 22 (granting Defendants' motion to dismiss as unopposed).

Case No. 15-cv-01756-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS AND DENYING AS MOOT MOTION TO STRIKE